**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| SHARON HARTZ, NATASHA RAISA BEVARD, YANISSE OLIVERAS-HSIA, BRANDON HSIA-OLIVERAS, DIANA PALAGUACHI, AND JORDAN DORSEY,<br><br>Plaintiffs,<br><br>v.<br><br>THE WHISTLEBLOWER LAW FIRM, LLP, RIPKA KELLY, LLP f/k/a KHAWAM RIPKA, LLP, NATALIE KHAWAM CASE & ASSOCIATES, PLLC, AND NATALIE KHAWAM CASE, ESQ.,<br><br>Defendants. | Case No. 2:25-cv-15791(BRM) (JRA)<br><br>**OPINION** |

**MARTINOTTI, DISTRICT JUDGE**

Before the Court is Defendants Natalie Khawam Case, Esq. ("Attorney Khawam") and Natalie Khawam Case & Associates, PLLC's ("Khawam Law Firm") (collectively, "Khawam Defendants")[1] Motion to Dismiss ("Motion") (ECF No. 79) Plaintiffs Sharon Hartz, Natasha Raisa Bevard, Yanisse Oliveras-Hsia, Brandon Hsia-Oliveras, Diana Palaguachi, and Jordan Dorsey's ("Plaintiffs") Second Amended Complaint ("SAC") (ECF No. 63) pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6). Plaintiffs filed an Opposition (ECF No. 86), Khawam Defendants filed a Reply (ECF No. 87), and Plaintiffs filed a Sur-Reply (ECF No. 89; *see also*

[1] Defendant The Whistleblower Law Firm, LLP filed an Answer on March 31, 2026. (ECF No. 64.) All claims against Defendant Alan Ripka, Esq., individually, were dismissed without prejudice on May 7, 2026. (ECF No. 77.) As of the date of this Opinion, Defendant Ripka Kelly, LLP has neither answered the Second Amended Complaint nor filed a motion to dismiss.

ECF No. 90 (granting Plaintiffs' request to file a Sur-Reply)). Having reviewed and considered the parties' submissions filed in connection with the Motion and having declined to hold oral argument pursuant to Rule 78(b), for the reasons set forth below and for good cause having been shown, Khawam Defendants' Motion is **GRANTED**.

## I. BACKGROUND

### A. Factual Background

For purposes of the Motion, the Court accepts the factual allegations in the SAC as true and draws all inferences in the light most favorable to Plaintiffs. *See Philips v. Cnty. of Alleghany*, 515 F.3d 224, 228 (3d Cir. 2008). The Court also considers any "document *integral to or explicitly relied* upon in the complaint." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (quoting *Shaw v. Digit. Equip. Corp.*, 82 F.3d 1194, 1220 (1st Cir. 1996)).

Plaintiffs are Gold Star Families "who received survivor benefits from the [United States] Army following the death of a family member in active duty." (ECF No. 63 ¶ 2; *see also id.* ¶¶ 19, 21.) Major Caz Craffy ("Major Craffy"), a "Financial Counselor with the United States Army Casualty Assist Office ('USACAO') and the United States Army Survivor Outreach Services Program ('SOS')," was "assigned to provide financial information and counseling to Plaintiffs' families." (*Id.*; *see also id.* ¶ 22.)

In his capacity as a Financial Counselor, "Major Craffy was only permitted to provide basic information and education with respect to survivor benefits, budgeting, savings plans, health care, insurance options, and retirement planning options." (*Id.*) The United States Army ("Army") "prohibited [Major Craffy] from providing personal opinions regarding survivors' benefits decisions and managing and investing survivors' benefits proceeds," as well as "from simultaneously working as an investment advisor with private securities firms." (*Id.*) Major Craffy

was also "precluded from employment with investment firms . . . and was prohibited from personally managing or investing funds belonging to Gold Star families." (*Id.* ¶ 24.)

Despite these limitations, Major Craffy gained Plaintiffs' trust and confidence to "convince them to allow him to invest and manage the funds comprising their survivor death benefits and life insurance proceeds." (*Id.* ¶ 23.) He then invested Plaintiffs' funds through "two investment firms with whom [he] . . . had a professional affiliation and from whom he received commissions." (*Id.*) Major Craffy "enrich[ed] himself through commissions earned on trades and investments executed through" those two firms. (*Id.* ¶ 27.) He did not inform Plaintiffs the Army was not affiliated with those two firms, and he did not disclose he was precluded from "working for an investment firm or personally managing or investing money that Gold Star families received as life insurance or death benefits." (*Id.* ¶¶ 25–26.) Moreover, to open investment accounts and trade securities at those firms, Major Craffy "completed [certain] forms for Plaintiffs and overstated their investment experience and risk appetite, which allowed him to invest Plaintiffs' money with little oversight." (*Id.* ¶ 28.) While Major Craffy enjoyed substantial commission from the "numerous high-risk unauthorized trades" that he executed, Plaintiffs suffered significant financial losses. (*Id.* ¶¶ 29–30.)

Plaintiffs "learned of potential claims against" the Army in or around November 2022 "when they were contacted by U.S. Army Special Agents and informed that the Army was investigating Major Craffy for fraudulent acts relating to his role as a Financial Counselor for the USACAO and SOS." (*Id.* ¶ 31.) Subsequently, Plaintiff retained Attorney Khawam, Defendant Alan Ripka, Esq. ("Attorney Ripka"), and Defendant The Whistleblower Law Firm, LLP ("The Whistleblower Law Firm") to pursue a civil action against the Army for "failing to supervise Major Craffy." (*Id.* ¶¶ 32, 34.) However, Attorneys Khawam and Ripka and The Whistleblower Law

Firm failed to preserve Plaintiffs' failure-to-supervise claims by failing to provide "written notice of claim within two years of the date on which the cause of action accrued," which is "accomplished through submission of Standard Form 95." (*Id.* ¶¶ 36, 38.) Plaintiffs maintain their claims therefore became non-viable in November 2024. (*Id.* ¶ 38.)

Attorney Khawam, who Plaintiffs contend had recently become a celebrity in connection with a separate representation (*id.* ¶ 33), instead "arranged a series of self-promoting interviews with Inside Edition and NBC" between February and May 2023 during which she "emphasized her intention to aggressively pursue Plaintiffs' claims against the U.S. Army for failing to supervise Major Craffy and prevent him from perpetrating his fraudulent scheme on vulnerable Gold Star families" (*id.* ¶¶ 39–40). For instance, "in a May 6, 2024 story aired by NBC News, . . . Attorney Khawam stated 'I do believe that there's blood on the hands of the Army here.'" (*Id.* ¶ 40.)

Two months later, on July 6, 2023, Major Craffy was "indicted on six (6) counts of wire fraud, one count of securities fraud, one count of false statement on a loan application, one count of acts affecting personal financial interests, and one count of false statements." (*Id.* ¶ 42.) The next day, "the Securities and Exchange Commission ('SEC') filed a complaint against Major Craffy alleging violations of Section 17(a) of the Securities Act of 1933 and Section 10(b) of the Securities Exchange Act of 1934 and the Regulation Best Interest rule." (*Id.* ¶ 43.) On August 21, 2024, "after pleading guilty, Major Craffy was sentenced to 151 months in prison and ordered to forfeit the fruits of his fraudulent scheme, which the government calculated to be $1,483,741.41." (*Id.* ¶ 44.) On January 7, 2025, "a judgment and order of restitution was entered against Major Craffy, awarding Gold Star Victims over $4 million in restitution." (*Id.* ¶ 48.)

In an effort to be made whole, Plaintiffs through new counsel filed the SAC bringing claims against all Defendants for legal malpractice (Count One), breach of fiduciary duty (Count Three), and breach of contract (Count Four) (*id.* ¶¶ 164–69, 179–88), and a claim for negligent supervision against Attorney Ripka, The Whistleblower Law Firm, and Defendant Ripka Kelly, LLP f/k/a Khawam Ripka, LLP ("Khawam Ripka Law Firm") (*id.* ¶¶ 170–78),[2] due to Defendants failure "to preserve and to initiate Plaintiffs' claims against the . . . Army for the failure to supervise" Major Craffy (*id.* ¶ 2).

**B. Procedural History**

On March 26, 2026, Plaintiffs filed the SAC. (ECF No. 63.) The Whistleblower Law Firm filed an Answer to the SAC on March 31, 2026. (ECF No. 64.) On April 30, 2026, the Court held a status/settlement conference. (ECF No. 72.) Upon consent of the parties, all claims against Attorney Ripka, individually, were dismissed without prejudice on May 7, 2026. (ECF No. 77.) The Khawam Defendants filed their Motion to Dismiss the SAC on May 15, 2026. (ECF No. 79.) On June 3, 2026, Plaintiffs filed an Opposition. (ECF No. 86; *see also* ECF No. 85 (extending the deadline to file opposition papers to June 3, 2026)). The Khawam Defendants filed a Reply on June 19, 2026. (ECF No. 87; *see also* ECF No. 85 (extending the deadline to file reply brief to June 19, 2026)). On June 26, 2026, Plaintiffs filed a Sur-Reply. (ECF No. 89; *see also* ECF No. 90 (granting Plaintiffs' request to file a Sur-Reply)).

[2] Attorney Khawam founded The Whistleblower Law Firm and the Khawam Law Firm. (ECF No. 63 ¶ 17.) She was a partner at The Whistleblower Law Firm "at all times relevant hereto." (*Id.*) The Khawam Ripka Law Firm was formed in or around September 2020 as the successor firm to The Whistleblower Law Firm. (*Id.* ¶ 15.) In or around January 2025, Attorney Khawam "was dismissed and bought out of the Khawam Ripka Law Firm" (*Id.*) Attorney Ripka was the senior partner of The Whistleblower Law Firm and the Khawam Ripka Law Firm; as the senior partner, "he was responsible for supervising less experienced attorneys including . . . Attorney Khawam." (*Id.* ¶ 18.)

## II. LEGAL STANDARD

In deciding a motion to dismiss pursuant to Rule 12(b)(6), a district court is "required to accept as true all factual allegations in the complaint and draw all inferences from the facts alleged in the light most favorable to [the non-moving party]." *Phillips*, 515 F.3d at 228. "[A] complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). However, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555 (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957); and then quoting Fed. R. Civ. P. 8(a)(2)). A court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286 (1986). Instead, assuming the factual allegations in the complaint are true, those "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678 (citing *Twombly*, 550 U.S. at 556). This "plausibility standard" requires the complaint to allege "more than a sheer possibility that a defendant has acted unlawfully," but it "is not akin to a 'probability requirement.'" *Id.* at 678 (citing *Twombly*, 550 U.S. at 556). "[D]etailed factual allegations" are not required, but "more than an unadorned, the-defendant-unlawfully-harmed-me accusation" must be pled; it must include "factual enhancement" and not just conclusory statements or a "recitation of the elements of a

cause of action." *Id.* (quoting *Twombly*, 550 U.S. at 555, 557). In assessing plausibility, the court may not consider any "[f]actual claims and assertions raised by a defendant." *Doe v. Princeton Univ.*, 30 F.4th 335, 345 (3d Cir. 2022).

"Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* (quoting Fed. R. Civ. P. 8(a)(2)). Indeed, after *Iqbal*, conclusory or "bare-bones" allegations will no longer survive a motion to dismiss: "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 678 (citing *Twombly*, 550 U.S. at 555). To prevent dismissal, all civil complaints must set out "sufficient factual matter" to show the claim is facially plausible, allowing "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556, 570). The Supreme Court's ruling in *Iqbal* emphasizes a plaintiff must show the allegations of his or her complaints are plausible. *See id.* at 670.

While, generally, the court may not consider anything beyond the four corners of the complaint on a motion to dismiss pursuant to Rule 12(b)(6), the Third Circuit has held "a court may consider certain narrowly defined types of material without converting the motion to dismiss [to one for summary judgment pursuant to Rule 56]." *In re Rockefeller Ctr. Props. Sec. Litig.*, 184 F.3d 280, 287 (3d Cir. 1999). Specifically, courts may consider any "document *integral to or explicitly relied* upon in the complaint." *In re Burlington Coat Factory*, 114 F.3d at 1426 (quoting *Shaw*, 82 F.3d at 1220). However, "[w]hen the truth of facts in an 'integral' document are contested

by the well-pleaded facts of a complaint, the facts in the complaint must prevail." *Princeton Univ.*, 30 F.4th at 342.

## III. DECISION

Khawam Defendants argue Plaintiffs fail to plead a viable underlying Federal Tort Claims Act ("FTCA") claim, so their legal malpractice action fails as a matter of law. (ECF No. 79-1 at 16–24.) Specifically, Khawam Defendants contend Major Craffy "acted outside the scope of his employment," "the intentional tort exception bars claims arising from fraud and deceit," and "the discretionary function exception shields the Army's supervisory decisions from liability." (*Id.* at 17.) Khawam Defendants also argue that had a viable FTCA claim existed, they did not have a duty to pursue it because the scope of their representation did not include FTCA litigation. (*Id.* at 24–33.) Further, Khawam Defendants assert Counts Three and Four should be dismissed because they are duplicative of Count One. (*Id.* at 33–34.)

Plaintiffs respond they have pleaded viable underlying FTCA claims because Major Craffy's conduct was within the scope of employment and the intentional tort and discretionary function exceptions do not apply. (ECF No. 86 at 7–21.) Plaintiffs further assert the scope of Defendants' representation included pursuing the underlying FTCA claims against the Army. (*Id.* at 23–26.) Plaintiffs also maintain Counts Three and Four plead alternative causes of action and should not be dismissed. (*Id.* at 26–27.)

### A. Legal Malpractice

Under New Jersey law, "[t]o sustain a claim for legal malpractice, a plaintiff must prove: '(1) the existence of an attorney-client relationship creating a duty of care by the defendant attorney, (2) the breach of that duty by the defendant, and (3) proximate causation of the damages claimed by the plaintiff.'" *Christakos v. Boyadjis*, 348 A.3d 966, 975 (N.J. 2026) (quoting

*McGrogan v. Till*, 771 A.2d 1187, 1193 (N.J. 2001)). "The first and most basic concept 'buried' within proximate cause is that of causation in fact," which is "sometimes referred to as 'but for' causation." *Conklin v. Hannoch Weisman*, 678 A.2d 1060, 1071 (N.J. 1996). In attorney malpractice cases, the "simplest understanding of cause in fact . . . arises from the case-within-a-case concept." *Id.* For instance, "if a lawyer misses a statute of limitations and a complaint is dismissed for that reason, a plaintiff must still establish that had the action been timely filed it would have resulted in a favorable recovery." *Id.* The parties agree Plaintiffs' legal malpractice claims require them to establish a "case within a case" with respect to their underlying FTCA claims against the Army for the failure to supervise Major Craffy. (*See* ECF No. 79-1 at 5, 16; ECF No. 86 at 2, 8.)

**1. Viability of the Underlying FTCA Claims**

"The United States of America, as a sovereign, is immune from suit unless it consents to be sued." *Merando v. United States*, 517 F.3d 160, 164 (3d Cir. 2008) (citing *United States v. Mitchell*, 445 U.S. 535, 538 (1980)). Through the FTCA, "the Government waived its immunity for its agents' torts." *Clark v. Sec'y of U.S. Navy*, 102 F.4th 658, 661 (3d Cir. 2024) (citing 28 U.S.C. §§ 2671–2680). However, that waiver "is subject to certain exceptions, including the discretionary function exception." *Xi v. Haugen*, 68 F.4th 824, 837 (3d Cir. 2023). The discretionary function exception provides "the Government cannot be sued for any claim based upon 'the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused.'" *Merando*, 517 F.3d at 164 (quoting 28 U.S.C. § 2680(a)). Such claims therefore remain barred. *Clark*, 102 F.4th at 661.

"The discretionary function exception 'marks the boundary between Congress' willingness to impose tort liability upon the United States and its desire to protect certain governmental activities from exposure to suit by private individuals.'" *Merando*, 517 F.3d at 164 (quoting *United States v. S.A. Empresa de Viacao Aerea Rio Grandense (Varig Airlines)*, 467 U.S. 797, 808 (1984)). Its purpose is "to prevent judicial second-guessing of legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort." *Id.* (internal quotation marks omitted) (quoting *Varig Airlines*, 467 U.S. at 814).

To determine if the discretionary function exception applies, a court conducts a two-part inquiry. *Id.* "First, a court must determine whether the act giving rise to the alleged injury and thus the suit involves an 'element of judgment or choice.'" *Id.* (quoting *United States v. Gaubert*, 499 U.S. 315, 322 (1991)). "The requirement of judgment or choice is not satisfied if a 'federal statute, regulation, or policy specifically prescribes a course of action for an employee to follow,' because 'the employee has no rightful option but to adhere to the directive.'" *Id.* (quoting *Gaubert*, 499 U.S. at 322). "Second, even if the challenged conduct involves an element of judgment, the court must determine 'whether that judgment is of the kind that the discretionary function exception was designed to shield.'" *Id.* at 165 (quoting *Gaubert*, 499 U.S. at 322–23).

Here, Plaintiffs maintain their underlying claims against the Army would have been for the failure to supervise Major Craffy. (*See, e.g.*, ECF No. 63 ¶¶ 1 ("This . . . action arises from the failure of Defendants . . . to preserve and to initiate Plaintiffs' claims against the United States Army for the failure to supervise Major Caz Craffy."), 5, 34, 38, 40, 168, 178.) Applying the two-part inquiry described above, the Court finds such claims would have been barred by the discretionary function exception.

"Federal appellate courts stand in agreement that decisions relating to the hiring, training, and supervision of employees are inherently a discretionary function." *Brown v. United States*, Civ. A. No. 17-1551, 2018 WL 741731, at *4 (E.D. Pa. Feb. 7, 2018), *aff'd* 823 F. App'x 97 (3d Cir. 2020). "Employment and termination decisions, and decisions as to investigation, are within the category of conduct covered by the discretionary function exception." *Brown*, 823 F. App'x at 102; *see also, e.g.*, *Woods v. United States*, Civ. A. No. 07-593, 2007 WL 3243852, at *5 (D.N.J. Nov. 1, 2007) ("The supervision of agency personnel . . . is discretionary and susceptible to policy-related judgments, such that tort claims predicated on negligent supervision are barred by the FTCA's discretionary function exception.").

The SAC does not identify a "federal statute, regulation, or policy specifically prescrib[ing] a course of action for an employee to follow." *Merando*, 517 F.3d at 164 (quoting *Gaubert*, 499 U.S. at 322); *see also Brown*, 823 F. App'x at 101–02 (finding district court properly determined discretionary function exception barred negligent supervision claims when plaintiff-appellant "did not identify a federal statute, regulation, or policy that mandated the actions that she asserted were warranted"). Throughout the SAC, Plaintiffs assert Major Craffy was prevented from engaging in certain conduct (*see, e.g.*, ECF No. 63 ¶¶ 2 (alleging Major Craffy was "only permitted" to provide certain information and "prohibited" from participating in specified financial activities), 24 ("Major Craffy was precluded from employment with investment firms . . . and was prohibited from personally managing or investing funds belonging to Gold Star families.")), but Plaintiffs do not point to a specific source for such prohibitions. *Baer v. United States*, 722 F.3d 168, 173–74 (3d Cir. 2013) (concluding appellants "failed to identify any violation of a mandatory policy or guideline" by any employee of the United States Securities and Exchange Commission in part because appellants "cite[d] no source" for what they argued was a mandatory duty).

Nor does Plaintiffs' Opposition provide a federal statute, regulation, or policy mandating specific conduct. Plaintiffs broadly reference a "clear regulatory scheme" that was "in place to govern the Army's financial counselors," but they do not cite to any regulations comprising that scheme. (ECF No. 86 at 20.) Instead, Plaintiffs claim an ethics regulation, 5 C.F.R. § 2635.106(b),[3] "is a specific policy mandate that removes the challenged conduct from the purview of the discretionary function exception." (ECF No. 86 at 20.) That ethics regulation provides "[i]t is the responsibility of the employing agency to initiate appropriate disciplinary or corrective action in individual cases." 5 C.F.R. § 2635.106(b). The Court finds the use of the word "appropriate" in this regulation involves an exercise of discretion. *See Merando*, 517 F.3d at 169 (concluding a statute providing "the Secretary of the Interior may utilize such statutory authorities . . . *as he deems appropriate*" did not mandate how the Government should act (emphasis added) (quoting 16 U.S.C. § 460*o*–3)); *Blancato v. St. Mary's Hosp.*, Civ. A. No. 91–4114, 1993 WL 114421, at *7 (E.D. Pa. Apr. 12, 1993) ("Rule 11 does not contain limits on the type of sanctions which may be imposed, but rather, allows for the imposition of 'appropriate' sanctions. The district court has discretion to tailor sanctions to the particular facts of the case." (citing *Lieb v. Topstone Indus., Inc.*, 788 F.2d 151, 157 (3d Cir. 1986))). Moreover, as the Khawam Defendants argue, the regulation "does not specify what disciplinary or corrective action must be taken, when it must be taken, how it must be implemented, or against whom it must be directed." (ECF No. 87 at 5.)

---

[3] Plaintiffs, perhaps inadvertently, cite to this regulation as 5 C.F.R. § 2635.107(b) in their Opposition (ECF No. 86 at 20; *see also* ECF No. 87 at 5 (Khawam Defendants' Reply brief attributing language from 5 C.F.R. § 2635.106(b) to § 2635.107(b))) and as 28 U.S.C. § 2680(a) in their Sur-Reply (ECF No. 89 at 2).

Those decisions are left to the employing agency to decide on a case-by-case basis. *See* § 2635.106(b).[4]

Having found supervisory functions are inherently discretionary and Plaintiffs have not identified a federal statute, regulation, or policy mandating a course of action, the Court moves to the second part of the inquiry—whether the judgment "is of the kind that the discretionary function exception was designed to shield.'" *Merando*, 517 F.3d at 165 (quoting *Gaubert*, 499 U.S. at 322–23). As explained above, 5 C.F.R. § 2635.106(b) requires discretion. "[I]f a regulation allows the employee discretion, the very existence of the regulation creates a strong presumption that a discretionary act authorized by the regulation involves consideration of the same policies which led to the promulgation of the regulations." *Gaubert*, 499 U.S. at 324. Therefore, the Court finds the Army's supervision of Major Craffy involved judgment "of the kind that the discretionary function exception was designed to shield.'" 517 F.3d at 165 (quoting 499 U.S. at 322–23); *see Brown*, 823 F. App'x at 101–02 (finding "alleged negligence . . . in (1) failing to train, supervise, discipline, or fire . . . employees and (2) failing to report, or investigate reports, of abuse . . . involve an element of judgment of the sort that the [discretionary function] exception was designed to shield"); *Briscoe v. United States*, 268 F. Supp. 3d 1, 10 (D.D.C. 2017) ("It is well settled that supervision of employees satisfies the second prong of the discretionary function inquiry.");

[4] Indeed, if there was any doubt whether 5 C.F.R. § 2635.106(b) provides a way to bypass sovereign immunity, such doubt is put to rest by the next subsection of that regulation: "A violation of this part or of supplemental agency regulations, as such, does not create any right or benefit, substantive or procedural, enforceable at law by any person against the United States, its agencies, its officers or employees, or any other person." 5 C.F.R. § 2635.106(c). Federal courts interpreting this provision find it preserves the United States' sovereign immunity. *Pamon v. U.S. Postal Serv.*, Civ. A. No. 24-2061, 2025 WL 2632401, at *7 (N.D. Tex. Aug. 6, 2025) ("In . . . [5 C.F.R. § 2635.106(c)], the United States does not waive its immunity from suit; instead, it expressly preserves it."); *Freeman v. Raytheon Techs. Corp.*, Civ. A. No. 22-01161, 2023 WL 1927985, at *8 (D. Colo. Feb. 10, 2023) ("Logically, if there is no right of private action, there is no implication that Congress intended any waiver of sovereign immunity.").

*Vickers v. United States*, 228 F.3d 944, 950 (9th Cir. 2000) ("This court and others have held that decisions relating to the hiring, training, and supervision of employees usually involve policy judgments of the type Congress intended the discretionary function exception to shield.").

Accordingly, the Court concludes the discretionary function exception would have barred Plaintiffs' claims for negligent supervision against the Army, and Plaintiffs have failed to establish a successful case-within-a-case. Khawam Defendants' Motion to Dismiss Plaintiffs' legal malpractice claim (Count One) is therefore **GRANTED** without prejudice.[5]

The Court acknowledges the allegations in the SAC detail significant harm suffered by Plaintiffs on account of Major Craffy's conduct. But the fact that the Plaintiffs were harmed does not necessarily mean that the Court possesses the power to rectify that harm. As the Third Circuit has made plain, "[t]ragedy does not trump sovereign immunity." *Clark*, 102 F.4th at 660. "Congress has the constitutional authority to define the jurisdiction of the lower federal courts, and, once the lines are drawn, limits upon federal jurisdiction . . . must be neither disregarded nor evaded." *Corzine v. 2005 Def. Base Closure & Realignment Comm'n*, 388 F. Supp. 2d 446, 449 (D.N.J. 2006) (quoting *Keene Corp. v. United States*, 508 U.S. 200, 207 (1993)). The United States "is immune from suit save as it consents to be sued, and the terms of its consent to be sued in any court define that court's jurisdiction to entertain the suit." *CNA v. United States*, 535 F.3d 132, 140–41 (3d Cir. 2008) (quoting *United States v. Sherwood*, 312 U.S. 584, 586 (1941)). "Here, Congress barred liability for discretionary functions 'whether or not the discretion involved [is]

---

[5] Defendants seek dismissal of both Count One (legal malpractice) and Count Two (negligent supervision). (ECF No. 79-1 at 35.) Count Two, however, is only brought against Attorney Ripka, The Whistleblower Law Firm, and the Khawam Ripka Law Firm—it is not brought against the Khawam Defendants who filed the Motion. (ECF No. 63 ¶¶ 170–78.) Therefore, the Court need not address Count Two.

abused.'" *Clark*, 102 F.4th at 662 (quoting 28 U.S.C. § 2680(a)). Courts "cannot rewrite this language to make the Government liable for discretionary calls, even if they are egregious." *Id.*

**B. Entity Liability for the Khawam Law Firm**

Khawam Defendants argue all claims against the Khawam law Firm should be dismissed because the Khawam Law Firm did not exist when the events alleged in the SAC occurred, and the SAC does not allege an attorney-client relationship with the Khawam Law Firm. (ECF No. 79-1 at 14–16.) Plaintiffs do not oppose these arguments. (*See* ECF No. 86.) Rather, Plaintiffs "acknowledge that the successor liability theory against . . . [the Khawam Ripka Law Firm] is pleaded more thoroughly than the successor liability theory against [the Khawam Law Firm]." (*Id.* at 27.) Plaintiffs admit "amendment may be warranted" on this issue. (*Id.*)

Therefore, absent an opposing argument from Plaintiffs and considering Plaintiffs' recognition of the need to re-plead their theory of liability against the Khawam Law Firm, Defendants' Motion to Dismiss all claims against the Khawam Law Firm is **GRANTED** without prejudice. *See Crisis Ctr. N., Inc. v. Pa. Coal. Against Domestic Violence*, Civ. A. No. 26-01015, 2026 WL 2137131, at *14 (M.D. Pa. July 23, 2026) ("When a plaintiff fails to respond to arguments raised in a motion to dismiss, the court deems opposition to those arguments forfeited."); *Doe v. Small*, 654 F. Supp. 3d 376, 387 (D.N.J. 2023) ("The failure to respond to a substantive argument to dismiss a count, when a party otherwise files opposition, results in a waiver of that count." (quoting *Jimenez v. T.D. Bank, N.A.*, Civ. A. No. 20-07699, 2021 WL 4398754, at *14 (D.N.J. Sept. 27, 2021))); *Person v. Teamsters Loc. Union 863*, Civ. A. No. 12-2293, 2013 WL 5676802, at *2 (D.N.J. Oct. 17, 2013) ("Failure to raise legal arguments in opposition to a motion to dismiss results in waiver.").

**C. Counts Three and Four**

Khawam Defendants argue Count Three (breach of fiduciary duty) and Count IV (breach of contract) should be dismissed because they are duplicative of Count One (legal malpractice). (ECF No. 79-1 at 33.) Plaintiffs respond the "New Jersey Rules of Civil Procedure permit plaintiffs to plead as many separate and alternative claims and causes of action as may be supported by the facts of the case." (ECF No. 86 at 26–27.)[6]

"'[I]n the context of legal malpractice, a tort claim and a breach of contract claim are not alternative theories of recovery for the same conduct,' and the claims must be based on distinct conduct." *Cohen v. Horn*, Civ. A. No. 19-5604, 2022 WL 1718051, at *7 (D.N.J. May 27, 2022) (quoting *O'Keefe v. Friedman & Friedman, Ltd.*, Civ. A. No. 16-866, 2018 WL 1535234, at *6 (D.N.J. Mar. 29, 2018)), *aff'd*, 2022 WL 17546950 (3d Cir. Dec. 9, 2022); *see also Lopez–Siguenza v. Roddy*, Civ. A. No. 13-2005, 2014 WL 4854452, at *7 (D.N.J. Sept. 30, 2014) ("To permit a generalized claim for breach of contract to proceed, when the breach is apparently based solely upon the attorney's malpractice, would . . . be duplicative of the malpractice claim.").

"Indeed, the same concept applies for claims of breach of fiduciary duty." *Id.*; *see also CCC Atl., LLC v. Silverang*, Civ. A. No. 18-17433, 2019 WL 3334797, at *5 (D.N.J. July 25, 2019) (explaining a properly plead claim for breach of fiduciary duty requires a plaintiff to "plead misconduct by [the defendants] as fiduciary, e.g., dishonesty, self-dealing, or breach of loyalty,

[6] Plaintiffs incorrectly rely on state procedural rules because federal courts apply federal pleading standards. *See Stanziale v. Nachtomi (In re Tower Air, Inc.)*, 416 F.3d 229, 237 n.11 (3d Cir. 2005) ("[F]ederal pleading standards apply in federal court."); *Ingersoll-Rand Fin. Corp. v. Anderson*, 921 F.2d 497, 501 (3d Cir. 1990) ("Since [plaintiff's] action was brought in federal court, the Federal Rules of Civil Procedure govern the sufficiency of the pleadings."); *Gibbs v. Carnival Cruise Lines*, 314 F.3d 125, 135 (3d Cir. 2002) (noting under *Hanna v. Plumer*, 380 U.S. 460 (1965), "federal courts apply on-point Federal Rules of Civil Procedure instead of state procedural practices").

beyond a breach of a duty of care," and finding the plaintiff "fail[ed] to state a claim for breach of fiduciary duty" when the plaintiff "simply list[ed] the same conduct for this claim as it did for its legal malpractice claim" (quoting *Lopez-Siguenza*, 2014 WL 4854452, at *6)); *Lopez-Siguenza*, 2014 WL 4854452, at *6 (dismissing claim for breach of fiduciary duty when the plaintiff "failed to plead misconduct by [the defendant] as a fiduciary beyond the negligent acts encompassed by [the] [p]laintiff's legal malpractice claim").

Here, Plaintiffs base their claims for breach of fiduciary duty and breach of contract on the same conduct that forms the basis of their legal malpractice claim—namely, failing to provide written notice of their claims to the Army pursuant to the FTCA, failing to initiate litigation against the Army within the statute of limitations, and failing to advise their clients of the failure to preserve and timely file said claims. (*See* ECF No. 63 ¶¶ 167, 183, 187.) Accordingly, because the breach of fiduciary duty and breach of contract claims are duplicative of the legal malpractice claim, Khawam Defendants' Motion to Dismiss Counts Three and Four is **GRANTED** without prejudice. *See Cohen v. Horn*, No. 22-2148, 2022 WL 17546950, at *3 (3d Cir. Dec. 9, 2022) ("quickly dispens[ing] with appellant's challenge to grant of summary judgment on breach of contract and breach of fiduciary duty claims when appellant "based these claims on the same 'acts and omissions' underlying his [legal] malpractice claim").

## IV. CONCLUSION

For the reasons set forth above, Khawam Defendants' Motion to Dismiss (ECF No. 79) is **GRANTED**. An appropriate order follows.

*/s/ Brian R. Martinotti*
**HON. BRIAN R. MARTINOTTI**
**UNITED STATES DISTRICT JUDGE**

Dated: August 19, 2026